## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**MARIA MATEO and SELESTINO SANCHEZ,**

        **Plaintiffs,**

**vs.**                                                                  **Case No.  8:03-cv-480-T-17MSS**

**UNITED STATES OF AMERICA,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**THIS CAUSE** comes on for consideration upon the filing of Defendant, United States of America's Motion in Limine on Damages for Medical Expenses (Dkt. 18), Plaintiffs' Memorandum of Law in Response to United States' Motion in Limine on Damages for Medical Expenses (Dkt. 28), Defendant's Notice of Additional Authority in Support of Medicaid Setoff (Dkt. 35) and USA's Reply to Plaintiffs' Memorandum in Response to Defendant's Motion in Limine (Dkt. 42).  The District Court referred this matter to the Undersigned for a Report and Recommendation pursuant to Title 28, United States Code, Section 636(b)(1)(B), Fed. R. Civ. P. 72, and Local Rules 6.01(a),(b) and 6.02(a), M.D. Fla.  (Dkt. 20).

## I.    RELEVANT FACTS

Maria Mateo had her prenatal care at the East Manatee Health and Wellness Center through the Manatee County Rural Health Services, Inc. (Rural) where Dr. John Abu (Dr. Abu) was employed.  (Dkts. 1, 8, ¶7).  Rural was deemed eligible for coverage under the Federal Tort Claims Act.  (Dkt. 8, ¶5).  On October 6, 2000, Mateo arrived at Manatee Memorial Hospital (Memorial) in labor.  (Dkts. 1, 8, ¶7).  At 9:35 p.m., her infant (the "minor Plaintiff") was delivered by vacuum

assisted vaginal delivery.  (Dkts. 1, 8 ¶32).  It took five vacuum pulls to deliver the infant.  (Dkts. 1, 8, ¶32).  The infant was immediately taken to a warmed bed, suctioned and Neonatal Resuscitation Protocol standards were followed.  (Dkts. 1, 8, ¶32).  Dr. Abu accompanied the baby to the warmer and assisted with bag and mask ventilation per 100% oxygen.  (Dkts. 1, 8, ¶32).  The infant was reassessed at one minute and a weak cry was obtained.  (Dkts. 1, 8, ¶32). The infant was transferred to the Neonatal Intensive Care Unit.  (Dkts. 1, 8, ¶32).

The minor Plaintiff has been hospitalized numerous times since birth for various reasons such as sepsis, bronchiolitis, failure to thrive, vomiting and diarrhea.  (Dkts. 1, 8, ¶36).  Plaintiffs allege that the minor Plaintiff has a gastostomy tube for enteral feedings, suffers from severe brain damage, cerebral palsy and requires twenty-four hour care.  (Dkts. 1, ¶36).  Medicaid has paid for certain of the minor Plaintiff's medical expenses.

On or about April 24, 2003, and pursuant to 42 U.S.C. § 1396p(d)(4)(A), an Irrevocable Supplemental Care Trust (the Trust) was established for the benefit of the minor Plaintiff with the monies obtained through a settlement with Memorial.  (Dkt. 28).  The Trust provides that, after paying taxes and reasonable fees for trust administration, upon the death of the minor child, "[t]he Trustee shall then pay to the Florida Department of Children and Families, or its successor agency, as reimbursement to the Medical Assistance Program of the State of Florida, or to the similar agency in any other state in which the beneficiary may eventually reside, such sums as represent reimbursement for benefits provided by said state to the Beneficiary during the Beneficiary's lifetime." (Dkt. 18 at Ex. A, ¶ 5.01).

## II.    PROCEDURAL HISTORY

On March 17, 2003, Plaintiffs filed suit against Defendant under the Federal Tort Claim Act (FTCA), 28 U.S.C. § 2674, for damages for injuries to the minor Plaintiff allegedly caused by the negligence of Defendant by and through its employees, agents, and servants, including Dr. Abu. (Dkt. 1).  Plaintiffs allege that the minor Plaintiff sustained permanent and total disability as a result of negligent or wrongful acts during the labor and delivery of the minor Plaintiff.  (Dkt. 1).  The minor Plaintiff's parents asserted a claim for consortium damages.  (Dkt. 1).  On May 19, 2003, the Court entered a Case Management and Scheduling Order requiring dispositive motions to be filed by May 15, 2004.  (Dkt. 7).  On May 21, 2003, Defendant filed its answer and affirmative defenses. (Dkt. 8).  At some point in time, Plaintiffs entered into a settlement with Memorial.  (Dkts. 18, 28). Plaintiffs used a portion of the settlement funds to create the Trust.  (Dkts. 18, 28).  On April 23, 2004, the Court granted Defendant's Motion to Amend its Answer to add the affirmative defenses of set-off for Medicaid payments and for settlement proceeds paid by Memorial to Plaintiffs.  (See Dkt. 13).

This case was originally set for trial on the August, 2004 trial calendar.  (Dkts. 15, 22).  On July 16, 2004, however, Defendant filed its Motion in Limine on Damages for Medical Expenses. (Dkt. 18).  On July 19, 2004, the parties filed their Joint Pretrial Statement.  (Dkt. 19).  On July 20, 2004, counsel for the parties attended a pre-trial conference before the Undersigned. (Dkt. 23).  Both parties filed trial briefs and witness lists.  (Dkts. 25, 27, 31, 33).  On July 28, 2004, the Court removed the trial of the case from the August 2004 trial calendar based, in part, on the need for the Court to consider Defendant's Motion.  (Dkt. 36).  Final memoranda were filed regarding the Motion on August 10, 2004.  (Dkt. 42).

## III.   ANALYSIS

Defendant sets forth three arguments in its Motion in Limine on Damages for Medical Expenses.  (Dkt. 18).  First, Defendant argues that if Defendant is found liable to the minor Plaintiff for the reasonable cost of necessary medical services, the reasonable cost should be limited to the Florida Medicaid rates.  Next, Defendant argues that Defendant cannot be held liable for any past or future Medicaid covered medical expenses for the minor Plaintiff because Plaintiffs are not legally obligated to reimburse Medicaid.  Finally, Defendant argues that it is entitled to a set-off against its joint and several liability for economic damages the portion of Plaintiffs' settlement with Memorial that Defendant claims represents economic damages pursuant to Fla. Stat. § 766.207(a).

### A.   Defendant is Not Procedurally Barred from Presenting Its Arguments

The threshold issue, as presented by Plaintiffs, is whether Defendant should be permitted to proceed with the arguments it has raised in its Motion in Limine.  Plaintiffs argue that the Motion is truly a dispositive motion, seeking to eliminate Plaintiffs' claim for future economic damages, which was filed after the May 15, 2004 deadline.  However, Plaintiffs agreed at the July 20, 2004 hearing that they would waive this argument if given the opportunity to respond properly to Defendant's Motion in Limine.  Plaintiffs have now fully briefed their response to the issues presented in the Motion in Limine.  (Dkt. 28).

Plaintiffs also argue that Defendant has waived the defenses of payment or set-off by failing to include those defenses in Defendant's Answer.  However, although Defendant has yet to amend its Answer, the Court granted Defendant's Motion to Amend to include the affirmative defense of set-off for Medicaid payments and settlement proceeds on April 23, 2004.  (See Dkt. 13).  Further, as the parties have presented the issues as ones that have impeded the parties' ability to engage in

4

settlement discussions and because the Court will have to address the issues at some point in time, the Undersigned will address the issues as presented now.

      B.    Legal Background

The Medicaid program, established by 42 U.S.C. § 1396 *et seq.*, provides health care to certain eligible individuals through the cooperation of both the state and Federal Governments. Maxson v. Department of Children and Families, 869 So. 2d 653, 654 (Fla. 4th DCA 2004). Each state may structure its own Medicaid program, but only within the guidelines set forth by the Federal Government. Florida Pharmacy Ass'n v. Cook, 17 F. Supp. 2d 1293, 1295 (N.D. Fla. 1998). When a health care provider treats an indigent patient, the provider notifies the participating state and the state determines whether that patient qualifies for Medicaid assistance. Mallo v. Public Health Trust of Dade County, Fla., 88 F. Supp. 2d 1376, 1377 (S.D. Fla. 2000). If the patient does qualify, the participating state determines the cost of care and disburses payment to the provider. Id. Ideally, the Federal Government subsidizes a certain pre-ordained portion of the financial burden of the Medicaid program. See Cook, 17 F. Supp. 2d at 1295. Florida participates in this program and its Medicaid plan is provided in Title 65 of the Florida Administrative Code, Rule 65A-1.701. Maxson, 869 So. 2d at 654. The Florida Agency for Health Care Administration (AHCA) administers the Medicaid program in Florida. Cook, 17 F. Supp. 2d at 1296.

The Federal Medicaid Statute does not permit health providers to bill patients for the costs of their services in excess of monies paid by Medicaid. Mallo, 88 F. Supp. 2d at 1377. In Florida, Medicaid payments accepted by health care providers are accepted as payment in full for the treatment rendered. Id. at 1385 (citing Public Health Trust of Dade County, Florida v. Dade County School Board, 693 So. 2d 562, 565 (Fla. 4th DCA 1997)). Further, the Medicaid program requires

that participating states require patients to assign any rights they possess against third parties to the state and requires the state to seek reimbursement from third parties who are liable for monies paid for covered services.  Agency for Health Care Administration v. Estabrook, 711 So. 2d 161, 163 (Fla. 4th DCA 1998)(citing 42 U.S.C. §§ 1396a(a)(25), 1396k(a)(1)(A)).  Accordingly, Florida has enacted the "Medicaid Third-Party Liability Act."  Id. (citing Fla. Stat. § 409.910).

In 1993, the Federal Medicaid Statute was amended to allow, through the establishment of a supplemental or special needs trust, for a disabled person under the age of 65 to remain eligible for Medicaid assistance despite receipt of and retention of funds that might otherwise render the person ineligible for Medicaid coverage.  42 U.S.C. § 1396p(d)(4)(A); see Frerks v. Shalala, 52 F.3d 412, 414 (2d Cir. 1995)(stating that a special needs trust can shield assets from Medicaid eligibility determinations because an special needs trust limits trust fund expenditures to items that are not covered by Medicaid and SSI).  To qualify, however, these trusts must provide that, upon the death of the beneficiary, the state agency administering the Medicaid program will receive all amounts remaining in the trust up to the amount of medical assistance paid out.  Northwest Bank of North Dakota, N.A. v. Doth, 159 F.3d 328, 330 (8th Cir. 1998).  Finally, Federal law provides for the distribution of collected Medicaid reimbursements with directives that the state agency reimburse itself in the amount equal to state Medicaid expenditures for the individual, then reimburse the Federal Government for the Federal share of expenditures and, finally, to the recipient any remaining amount.  42 U.S.C. § 1396k(b); 42 C.F.R. § 433.154.

Under the FTCA, the Federal Government has waived its immunity from suits for the negligent acts of its employees to the extent that "a private individual under like circumstances" would be liable.  28 U.S.C. § 2674; Scheib v. Florida Sanitarium and Benevolent Association, 759

6

F.2d 859 (11th Cir. 1985).  Thus, the determination of what elements of damages are recoverable in a claim for injuries sustained in a medical malpractice action under the FTCA proceeds under state law.  Hassan v. U.S. Postal Service, 842 F.2d 260, 262 n.3 (11th Cir. 1988).  As Plaintiffs have filed suit under the FTCA in the present case, the Undersigned looks to Florida law to determine Defendant's purported right to a set-off.

      C.    <u>Defendant is Not Entitled to a Set-off for Medicaid Payments</u>

Defendant argues that it is not liable to Plaintiffs for past or future medical services covered by Medicaid.  Specifically, Defendant argues that Plaintiffs cannot recover as an element of damages the requested amount of the Medicaid Third Party lien beginning on the date of the establishment of the Trust, March 2003, through June 2004[1].  (Dkt.18 at p.4).  Stated differently, Defendant argues that it should receive a set-off for Medicaid payments under Florida's common law collateral source rule.  In the alternative, Defendant argues that it is at least entitled to a sixty percent set-off for all past and future Medicaid payments as this amount purportedly represents its contribution to Florida's Medicaid system.  Defendant argues that Florida's collateral source statute, Fla. Stat. § 768.76, does not apply to this case because the establishment by the minor Plaintiff of the Trust removes all personal liability to re-imburse Medicaid and because Defendant is a partial funder of the Medicaid benefits available to the minor Plaintiff.  Plaintiffs respond that there is no Florida case law to support Defendant's position and, to the contrary, Fla. Stat. § 768.76 applies to the present case and specifically excepts Medicaid benefits from being set-off as a collateral source.  Further, Plaintiffs argue that reimbursement for the Medicaid covered services is specifically provided for upon the death of the minor Plaintiff within the terms of the Trust.

---

[1] The reason for this end date is not clear from Defendant's Motion.

7

Based on the analysis set forth below, the Undersigned concludes that Florida has altered its common law collateral source rule to allow for set-offs from certain collateral sources, but has expressly and unequivocally excluded Medicaid payments as an available source for such a set-off. Further, there is no exception where, as in this case, an agency of the United States is the Defendant and Plaintiffs have set up a Trust.

At Common Law

Florida's common law collateral source rule allowed an injured person to recover full compensatory damages from a tortfeasor regardless of the fact that another independent source already paid a portion of those damages. Gormley v. GTE Products Corp., 587 So. 2d 455, 457 (Fla. 1991). The rule further prohibited the introduction of evidence of collateral sources received by a plaintiff and prevented set-offs for these benefits from the damages award. Sheffield v. Superior Ins. Co., 800 So. 2d 197, 199 n.3 (Fla. 2001). The reasoning behind the rule was that it is preferable for a plaintiff to receive a windfall than for a defendant to be relieved of responsibility for the wrong it committed because of payments from another source. Calloway v. Dania Jai Alai Palace, Inc., 560 So. 2d 808, 809 (Fla. 4th DCA 1990)(citing Walker v. Hilliard, 329 So. 2d 44 (Fla.1st DCA 1976)). The common law recognized the right of a Defendant to receive credit for monies it had paid the Plaintiff in advance of a judgment so long as the payments were gratuitous and no rights of subrogation or lien or reimbursements were available.

Common Law Abrogated

Fla. Stat. § 768.76 was enacted in 1986 as part of the Tort Reform and Insurance Act and abrogated Florida's common law collateral source rule. Goble v. Frohman, 848 So. 2d 406, 408 (Fla. 2d DCA 2003)(citing Ch. 86-160, §§ 1, 55, Law of Fla.), rev. granted, 865 So. 2d 480 (Fla. Jan. 22,

2004).  Its purpose was to limit the liability of carriers so that Florida citizens could receive affordable coverage.  Id.  Fla. Stat. § 768.76 specifically excludes Medicaid benefits received from being deducted as a collateral source.  The statute provides:

> In any action to which this part applies in which liability is admitted or is determined by the trier of fact and in which damages are awarded to compensate the claimant for losses sustained, the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant from all collateral sources; however, there shall be no reduction for collateral sources for which a subrogation or reimbursement right exists.  Such reduction shall be offset to the extent of any amount which has been paid, contributed, or forfeited by, or on behalf of, the claimant or members of the claimant's immediate family to secure her or his right to any collateral source benefit which the claimant is receiving as a result of her or his injury.  Fla. Stat. § 768.76(1).

The statute further provides:

> Notwithstanding any other provision of this section, benefits received under ... the Medicaid program of Title XIX of the Social Security Act ... shall not be considered a collateral source.  Fla. Stat. § 768.76(2)(b).

Although, under the statute, evidence of collateral sources still may not be introduced before the jury, after entry of a verdict the trial court is required to reduce the amount of damages by the amount of collateral sources that do not include a right of subrogation.  Sheffield, 800 So. 2d at 199 n.3. Therefore, the evidentiary impact of the common law rule remains but not the damages impact.

In construing Fla. Stat. § 768.76, this Court looks first to the plain language of the statute to determine the legislative intent.  Rollins v. Pizzarelli, 761 So. 2d 294, 297 (Fla. 2000).  When the statutory language is unambiguous, it is conclusive and the Court need not engage in statutory interpretation.  Id.  Defendant admits that Fla. Stat. § 768.76 specifically and unequivocally excludes Medicaid benefits received from being deducted as a collateral source not only by inference and definition but expressly by name.  See Cronin v. Washington National Insurance Co., 980 F.2d 663, 672 (11th Cir. 1993)(refusing to reduce the plaintiff's damages award by the amount received in

9

Medicaid payments because, "the statute specifically exempts Medicaid payments from consideration as collateral sources"). Defendant argues, however, that the existence of the Trust in the present case has extinguished the underlying basis for the statutory exclusion of Medicaid benefits in Fla. Stat. § 768.76, namely Medicaid's right to seek reimbursement from Plaintiffs, and, therefore, the statutory exclusion should not be deemed by the Court to be inapplicable. Defendant cites no authority to support this position.

First, the special needs trust is a creature of Federal Medicaid law. It is not included in some distant, obscure legislative provision but was engrafted onto the Federal Medicaid Statute, 28 U.S.C. §1396p(d)(4)(A), by the 1993 Amendments to the Medicaid Act. Doth, 159 F.3d at 329. The provision provides for the right of, among others, a tort victim to retain settlement or judgment proceeds and continue to receive Medicaid benefits. Such retained funds may not be considered in determining Medicaid eligibility. 42 U.S.C. § 1396p(d)(4)(A). Congress expressly provided for a means of reimbursing Medicaid from the Trust that did not involve a set-off. In order to receive the benefits of such a trust, the trust must provide that "the *State* will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter." Id. (emphasis added). As noted above, the state Medicaid program reimburses itself then reimburses the Federal Government and, if funds remain, the individual.

Florida's collateral source statute was amended in 1993 and has since been amended in 1997 and 1999, subsequent to the Federal amendments providing for the special needs trust exception. See Fla. Stat. Ann. § 768.76 (2004). The exception the Government seeks here, for set-off when a special needs trust has been established or where the Government agency is the Defendant, was

never added to the statute.  The Legislature is presumed to know the laws in effect at the time it enacts or amends a statute.  See McNary v. Haitiam Refugee Center, Inc., 498 U.S. 479, 496, 111 S.Ct. 888, (U.S. Fla. 1991); Florida Dept. of Children and Families, et al. v. F.L., 880 So. 2d 602, 609 (Fla. 2004)) .  Had the Florida Legislature determined it necessary and appropriate to alter the statutory exclusion of Medicaid benefits from deduction as a collateral source when a special needs trust was in place, it could have expressly so done; it did not.  See Rollins, 761 So. 2d at 298 (citing Pizzarelli v. Rollins, 704 So. 2d 630, 633 (Fla. 4th DCA 1997) and stating that the Florida Legislature knows how to provide for set-offs when it wishes to do so).  Likewise, had Congress determined it appropriate to create an exception for a judgment obtained against the Government after the establishment of a special needs trust then it could have done so; it has not.

Second, Defendant fundamentally misunderstands the Medicaid law with regards to reimbursement and subrogation.  Defendant argues that Plaintiffs have no personal responsibility to pay back Medicaid in light of the creation of the Trust.  Defendant argues that since the minor Plaintiff does not owe a personal debt to Medicaid, he could, in theory, recover a judgment in a substantial amount and exercise his option not to place the funds in the Trust.  Whereupon, Defendant suggests, he might no longer be eligible to receive benefits under Medicaid but would also not be obligated to re-pay any benefit already paid by Medicaid since the establishment of the Trust beyond what remains in the trust at his death.

Defendant fails to recognize significant provisions of the Medicaid law.  Defendant cites to Fla. Stat. § 409.9101(3) of the Medicaid Estate Recovery Act which provides, in pertinent part:

> The acceptance of public medical assistance, as defined by Title XIX (Medicaid) of the Social Security Act, including mandatory and optional supplemental payments under the Social Security Act, shall create a debt to the agency in the total amount paid to or for the benefit of the recipient for

11

> medical assistance after the recipient reached 55 years of age.  Payment of
> benefits to a person under the age of 55 years does not create a debt.

Defendant argues that, pursuant to this section, Plaintiffs have no personal obligation to re-pay

Medicaid.  The immediately preceding section suggests otherwise:

> It is the intent of the Legislature that Medicaid be the payor of last resort for
> medically necessary goods and services furnished to Medicaid recipients.  All
> other sources of payment for medical care are primary to medical assistance
> provided by Medicaid.  If benefits of a liable third party are discovered or
> become available after medical assistance has been provided by Medicaid, it
> is the intent of the Legislature that Medicaid be repaid in full and prior to any
> other person, program or entity ... Fla. Stat. § 409.910(1).

This section provides three different ways for AHCA to recover its Medicaid payments to health

providers from a third party: (1) the Agency has an automatic lien for the amount of medical

assistance provided, (2) the Agency is automatically subrogated to rights to third-party benefits and

(3) acceptance of Medicaid results in an automatic assignment of the recipient's rights to third-party

benefits to the Agency.  Estabrook, 711 So. 2d at 164.  A Medicaid lien can be collected from the

recipient of a judgment or settlement.  See Fla. Stat. § 409.910(7)(a)(2).  The failure to pay Medicaid

results in civil and criminal penalties.  See Fla. Stat. § 409.910(17).  Importantly, while Plaintiffs

may not have a personal responsibility to re-pay Medicaid from personal funds or general assets,

Medicaid is clearly subrogated to Plaintiffs' recovery rights in the event Plaintiffs recover from third-

parties, including Defendants.  In accordance, from the settlement funds received from Memorial,

Plaintiffs have already re-imbursed Medicaid for payments made on behalf of the minor Plaintiff

prior to the creation of the Trust.

Presumably, Plaintiffs will have a similar obligation to pay for benefits obtained in this case

prior to any deposit into the Trust.  See Fla. Stat. § 409.910.  Defendant has not cited to and the

Court has not found any part of the Medicaid laws, including the Federal Medicaid amendments

providing for continued eligibility after a Trust is created, that removes AHCA's right of reimbursement from a third party in the event that a Trust is created.  Plaintiff is not under a shield of the special needs trust to that extent.  Even if no such prior reimbursement before making that deposit is required, Defendant is still limited to the scheme of reimbursement set forth in 28 U.S.C. §1396p(d)(4)(A).  The Trust, as noted, in accordance with Florida and Federal law, specifically provides that after paying taxes and reasonable fees for trust administration, upon the death of the minor child, the Trustee will reimburse the Medical Assistance Program of the State of Florida for the benefits provided by the state to the minor plaintiff during his lifetime.  (Dkt. 18 at Ex. A, ¶ 5.01).  The state of Florida is in turn obligated to reimburse the Federal Government for its share of payments made.  This Trust is irrevocable.  The proposal that Defendant recover its monies as a set-off in advance and to the derogation of the statutory scheme devised by Congress cannot be reconciled with the statute.  See  42 U.S.C. § 1396k(b).

Defendant argues additionally that there is no duty on the part of the trustee of the special needs trust to preserve the trust monies. The fact that there may or may not be sufficient funds to cover all of the paid benefits when the right to reimbursement attaches is clearly contemplated by the statute.  As such, it does not alter the Court's analysis of the statutory provisions.  The Undersigned finds that the existence of the Trust does not alter the application of the plain language of Fla. Stat. § 768.76, excluding Medicaid benefits received from being deducted as a collateral source.

Next, Defendant argues that the statutory provision should not apply because the Federal Government is the defendant.  Defendant's argument that the Florida Legislature in drafting Fla. Stat. § 768.76 "did not contemplate a case where the United States was both the defendant and the source

of the Medicaid benefits" is unpersuasive.  (Dkt.18 at p.4).  First, the Florida Legislature specifically

contemplated that negligence suits would be brought against the *state* government, a partial funder

of the Medicaid program, as evidenced by its inclusion of a waiver of sovereign immunity section

in the very same Chapter.  See Fla. Stat. § 768.28 (providing that the state waives its sovereign

immunity in tort actions "if a private person would be liable to the plaintiff"); see also Hollis v.

School Board of Leon County, 384 So. 2d 661, 663 (Fla. 1st DCA 1980)(stating that this provision

is modeled after its Federal counterpart, 28 U.S.C. § 1346(b)- the very provision under which

Plaintiffs have brought suit in the present case).  Nevertheless, the Florida Legislature did not include

a statutory provision providing for a set-off of Medicaid benefits paid when either the State or the

Federal Government is the defendant.

Defendant argues that the collateral source statute does not apply when a payment is coming

directly from the defendant itself[2].  On this point, Defendant's reliance on the dicta in Amlotte v.

United States, 292 F. Supp. 2d 922, 926-27 (E.D. Mich. 2003) is misplaced.  Presumably Defendant

does not rely on the *holding* in Amlotte as the court, there, granted the plaintiff's motion in limine

to *exclude* evidence of Medicare benefits available to the plaintiff in the future.  Id. at 924.  There,

the plaintiffs similarly filed a claim under the FTCA against the United States.  Id. at 931-32.  The

court analyzed a Michigan statute that differed, in significant part, from Florida's collateral source

statute in that it determined the *types* and components of damages to which its collateral source

statute applied.  Id. at 926.  Future medical payments, at issue there, were determined not to be a

---

[2]Waering v. U.S., 943 F. Supp. 1504, 1541 (S.D. Fla. 1996), cited by Defendant, is not instructive on this issue in that, there, the Court avoided the issue of whether or not the public services were "not deemed to be 'collateral sources' because of the Defendant's partial funding" because the available government services were not of the type that the plaintiff needed.

component of damages to which any collateral sources, however defined, could be applied. Id.  The Court went on to address the Defendant Government's assertion that the exception granted to medical costs did not preclude set-off for Medicare because it was a direct not collateral source. Id. at 927.  While the Amlotte Court determined that Michigan retained the distinction between direct and collateral payments, it also determined that the nature of the Medicare benefits were collateral, rather than direct, and therefore not subject to off-set.  Id. at 928, 930.  Florida takes a completely different approach.  It does not define the types of damages that are immune from off-set.  Rather, Florida's collateral source statute defines the type and component of *sources* available for set-off and expressly excludes Medicaid benefits received from that definition and, thus, from being set-off as a collateral source, period.  Fla. Stat. § 768.76.

In any event, the Court need not determine whether Fla. Stat. § 768.76 abrogated the distinction between direct and collateral payments because even if the statute has not eviscerated the common law distinction between direct and collateral benefits as it relates to Medicaid benefits, the Undersigned finds that Medicaid payments are not direct payments from the Defendant.  At common law, courts carved out an exception to the rule precluding set-off against recovery when the defendant itself was the source of a plaintiff's prior recovery.  See Rest. 2d Torts, § 920A.  That exception applied, however, where the defendant's prior payment was wholly gratuitous and not due to a duty or obligation or subject to reimbursement, repayment or subrogation.

Certain courts, in determining whether to characterize Federal benefits as coming directly from the Government defendant in an FTCA case have first looked to the source of the funds.  The Courts have determined, generally, that funds coming from the General Treasury of the United States are to be considered direct payments from the government defendant, but funds coming from a

15

special fund separate and distinct from general Government revenues are not to be considered as coming directly from the Government defendant. See e.g. U.S. v. Harue Hayashi, 282 F.2d 599, 603-04 (9th Cir. 1960); see also Feeley v. U.S., 337 F.2d 924, 932-33 (3d Cir. 1964)(noting that state law is "likely to be of little help" in determining whether payment from the Federal Government defendant is a direct source). Medicaid is not a direct payment from the General Treasury of the United States Government. Rather, by statute, Medicaid payments come from the State Agency, AHCA, not directly from the Federal Government. This payment constitutes pooled funds by the State and Federal Government. The Federal Government does not control the disbursement of those funds or the determination of eligibility, nor has the Government shown that reimbursement through the program creates a direct hit to the general federal treasury[3].

The courts have also looked to whether the fund is purely gratuitous in nature. As part of this inquiry, Courts consider whether a plaintiff has made a contribution to the fund in determining whether the fund is direct or collateral and whether any rights of reimbursement exist to avoid the potential of double recovery. For example, the courts have addressed Medicare payments on several occasions, finding that Medicare benefits are not direct payments from the Government defendant because of the nature of contributions from the plaintiff. See e.g. Manko v. U.S., 830 F.2d 831, 836-37 (8th Cir. 1987); Berg v. U.S., 806 F.2d 978, 985 (10th Cir. 1986). While the minor Plaintiff here

---

[3]In this regard, it should be noted that the Defendant offers no evidence of the amount of its claimed contribution to the Medicaid fund administered by ACHA. Counsel offers conclusory statements about the percentage contribution the Federal Government ideally allocates to Florida's fund, putting the estimate at approximately sixty percent. No evidence is presented on this record that this is the ideal or that the ideal has ever been met. Further no suggestion is made that the minor Plaintiff here received an equivalent proportion of Medicaid benefits from the state funds and federal funds as envisioned by the plan drafters. Thus even if the Court were inclined to consider such apportionment and set-off, the burden to prove up the fund would lie with the Government and would appear to be an onerous one.

has not contributed to Medicaid in the same sense that Medicare recipients have contributed, the minor Plaintiff here has forfeited substantial monies into the Trust for the purpose of retaining eligibility for Medicaid benefits.   Additionally, payment to him is not purely gratuitous, it is an entitlement based on indigency and severe disability.

While the Eleventh Circuit has not addressed the specific issues noted above, the Eleventh Circuit in <u>Shaw v. U.S.A. Veterans Administration</u>, 711 F.2d 156, 158 (11th Cir. 1983), reversed the award of a set-off to the Government defendant for the amount of VA benefits the plaintiff's wife would receive if the plaintiff died prematurely.   The Court concluded that the plain language of the provision governing distribution of those VA benefits provided for a deduction in the event of recovery in the case.   <u>Id.</u> Here, while the Medicaid statute does not contemplate a reduction of future benefits to Plaintiffs in the event of recovery in this case, it does contemplate a lien and reimbursement.   Accordingly, Medicaid retains, at most, a lien on Plaintiffs' recovery even in light of the Trust.   At the very least, Medicaid retains the right of reimbursement from the Trust upon the death of the minor Plaintiff.   Thus, although <u>Shaw</u> involved a Veterans' Benefits statute, the minor Plaintiff in this case will not receive a double recovery as the plaintiff in <u>Shaw</u> would not receive double benefits from the Government defendant via an award and VA benefits.   <u>Compare</u> <u>District of Columbia v. Jackson</u>, 451 A.2d 867, 871-72 (D.C. 1982)(finding the District of Columbia entitled to a credit for medical bills paid by Medicaid under the common law where there was no apparent collateral source statute at play).

Accordingly, the Undersigned finds that even if Fla. Stat. § 768.76 has not abrogated the common law distinction between direct and collateral payments, Plaintiffs' Medicaid benefits in this

case are not direct in nature.  Therefore, the fact that the Government is a defendant here does not alter the application of the plain language of Fla. Stat. § 768.76.

Future Medicaid Benefits

With respect to Defendant's argument that it is entitled to a set-off for Medicaid benefits available to Plaintiff in the future, Florida courts have found that the deductions provided by Fla. Stat. § 768.76 only apply to benefits that have been paid or are presently due and owing, but not to sources which *may* be available to the plaintiff in the future.  Allstate Insurance Co. v. Rudnick, 761 So. 2d 289, (Fla. 2000); Swamy  v. Hodges, 583 So.2d 1095 (Fla. 1st DCA 1991)(finding no right to set-off for future social security benefits);  Measom v. Rainbow Connection Preschool, Inc., 568 So.2d 123 (Fla. 5th DCA 1990)(finding no right to a set-off for future unearned collateral source benefits that are dependent on future employment because they are not "otherwise available" to the plaintiff).  Further, the statute specifically references benefits received under Medicaid.  Fla. Stat. § 768.76.

Defendant relies on Florida Physician's Insurance Reciprocal v. Stanley, 452 So. 2d 514, 516 (Fla. 1984), which predates Florida's collateral source rule.  In Stanley, the Florida Supreme Court found that the admission of evidence of the availability of governmental free or low cost *services available to anyone* did not violate the statutory or common law collateral source rule.  The Court stated, "[w]e believe that the common-law collateral source rule should be limited to those benefits earned in some way by the plaintiff.  Governmental or charitable benefits *available to all citizens, regardless of wealth or status,* should be admissible for the jury to consider in determining the reasonable cost of necessary future care."  Id. at 515 (emphasis added).

The Stanley language refers only to the admissibility of evidence regarding benefits available to all citizens *regardless of wealth or status*. Id. Medicaid benefits clearly are not available to all citizens regardless of wealth or status. See id.; see also Parker v. Hoppock, 695 So. 2d 424 (Fla. 4th DCA 1997)(emphasizing that the Stanley holding applied only to testimony concerning benefits available *regardless of wealth or status*); but see Peterson v. Willie, 81 F.3d 1033, 1039 (11th Cir. 1996)(stating that "[t]here is no dispute that the medical care available to Florida's indigents is admissible.")  Plaintiffs have conceded in their Memorandum to the admissibility of the evidence regarding the availability of future Medicaid benefits to the minor Plaintiff and, therefore, the evidentiary issue presented by Stanley is not before this Court.  Rather, the only issue before this Court is whether Stanley dictates that the Federal Government is entitled to a set-off as a matter of law for future covered Medicaid benefits.  Plainly, Stanley does not bestow such a benefit on the Government.  Stanley dealt with the admissibility of evidence and not set-off.  Additionally, it addressed the receipt of free and low-cost charitable and governmental therapy and educational programs, a government *service* available to everyone, not Medicaid benefits, *payments* for which the state and federal governments retain certain rights of reimbursement.

Defendant also relies on the Eleventh Circuit's decision in Dempsey v. United States, 32 F.3d 1490 (11th Cir. 1994), to support its argument for a set-off award for future benefits provided by Medicaid.  While Dempsey involved similar facts in that the plaintiffs sued the Federal Government for damages resulting from the birth of a baby at an Air Force Base Hospital, Dempsey involved different benefits not addressed by name in Florida's collateral source statute.  Id. at 1492.  There, the Eleventh Circuit specifically noted that neither party contested the Magistrate Judge's finding that CHAMPUS payments, a benefits program for the dependents of certain retired members of the

19

military, were not immune from set-off.  Id. at 1493.  The Court expressly left review of that issue "for another day."   Id.  The Court simply reviewed the sufficiency of the evidence supporting the three set-offs granted by the Magistrate Judge from the plaintiff's award of future medical damages. Id. at 1494-95.  Neither case provides that Defendant is entitled to a set-off as a matter of law for Medicaid payments available to the minor Plaintiff in the future.

Further, the Court should not dictate that a plaintiff be limited in the future to the use of free or subsidized care.  See Feeley, 337 F.2d at 926 (finding, in a suit brought against the Federal Government for injuries sustained by a postal service truck, that the plaintiff's past use of the government facilities of the Veterans' Administration (VA) did not necessarily dictate the plaintiff's future use and that a reduction for future benefits would unconscionably remove plaintiff's ability to choose to see a private health provider).  Defendant argues that Medicaid payments differ because the receipt of payments does not dictate where the minor Plaintiff can receive care.  Defendant's argument presumes without any evidentiary showing that every health provider accepts Medicaid patients and the reduced rate that necessarily follows.  In this case, a set-off for future Medicaid benefits would effectively limit the minor Plaintiff to subsidized care.  The minor Plaintiff's ability to chose medical providers would be limited to those providers who accept Medicaid as payment. Further, such an affirmative set-off would subject Plaintiff to the uncertainty of changing laws and benefits in the future.  In the face of this uncertainty, it would be incongruous to deny set-off for known, liquidated, past benefits and permit set-off for uncertain, unliquidated, future benefits.

D. <u>The Court Should Not Award Damages to Plaintiffs for Medical Expenses Charged Off By Plaintiff's Medical Providers for Past Medical Bills</u>

Defendant argues next that the reasonable cost of necessary medical services should be limited to the Florida Medicaid rates.  Plaintiffs do not specifically respond to this argument.  The

cases cited by Defendant are currently under review by the Florida Supreme Court.  See Cooperative

Leasing, Inc. v. Johnson, 872 So. 2d 956, 960 (Fla. 2d DCA 2004)(finding that the appropriate

measure of compensatory damages for past medical expenses is the amount actually accepted as

payment in full by the provider), rev. granted, 884 So. 2d 22 (Fla. Sep. 10, 2004); see also Goble,

848 So. 2d 406 (affirming a reduction of the jury verdict for past medical expenses to the amount

that the plaintiff's medical providers agreed to accept under their contract with the plaintiff's HMO).

Other District Courts of Appeal have also addressed the proper amount of recovery for past medical

expenses finding that the amount actually accepted as payment by the provider is the appropriate

measure of recovery.  Thyssenkrupp Elevator Corp. v. Lasky, 868 So. 2d 547 (Fla. 4th DCA 2003),

rev. dismissed Thyssenkrupp Elevator Corp. v. Lasky, 873 So. 2d 1225 (Fla. Apr. 26, 2004) (finding

defendant entitled to have a jury award of past medical expenses reduced by the difference between

the amounts charged by the providers and the amounts actually paid by Medicare); Miami-Dade

County v. Laureiro, 2004 WL 2730776 (Fla. 3d DCA Nov. 24, 2004)(remanding for the trial court

to receive such evidence as may be necessary to fix the amount of reduction for medical bills beyond

those actually paid by Medicare).

Although these cases deal with Medicare payments rather than Medicaid payments, both

types of benefits prohibit a provider from billing a patient for amounts in excess of those accepted

as payment.  See 42 U.S.C. § 1395cc (Medicare), Fla. Stat. § 409.907(3)(j)(Medicaid).  Therefore,

both types of benefits necessarily implicate the compensatory purpose behind Fla. Stat. § 768.76 as

discussed in the above cases.  These cases, which deal only with the appropriate recovery rate for

past medical expenses reason that a Plaintiff cannot recover more than the amount by which the

Plaintiff was actually damaged.  Thus, if a medical provider waived all claims beyond what was paid

by, in this case, Medicaid the Plaintiff has not sustained and will not sustain an injury to that extent. Florida Courts have concluded that this is not akin to a set-off for benefits paid on behalf of the individual because the amounts excluded for damages were written off by the provider and not paid by any source.  Johnson, 872 So. 2d at 959.

To this extent, the Florida Courts appear to be in agreement.  The undecided issue is whether this is a matter for the Court to determine post verdict so as not to unduly influence the trier of fact. In this regard it might be confusing for a jury to hear without explanation that a plaintiff claims severe injury but has sustained disproportionately low medical expenses.  Knowledge of the full extent of medical expenses caused may bolster the credibility of the plaintiff's claimed and real injuries. It might also aid in consideration of future medicals that may be incurred.  To explain the disparity a plaintiff would have to reveal the existence of Medicaid or other subsidy, which the statute rejects for fear of undue prejudice.  Compare Johnson, 872 So. 2d at 959, rev. granted, 884 So. 2d 22 (Fla. Sep. 10, 2004), (finding the trial court should have granted appellants' motion in limine to exclude the introduction of evidence of the *full amount* of the plaintiff's medical bills), with Goble, 848 So. 2d at 410, rev. granted, 865 So. 2d 480 (Fla. Jan. 22, 2004), (affirming a limitation in damages for the amount of contractual discount and affirming the exclusion of evidence at trial regarding any contractual *discount*).

In this case, the Undersigned would Recommend the approach suggested by the Court in Goble.  848 So. 2d 406.  Because this is a bench trial, the potential risks are even lower.  As such, the Undersigned Recommends that the Court not award damages to Plaintiffs for medical expenses charged off by Plaintiff's medical providers for past medical bills.  However, during trial, Plaintiff should be allowed to introduce evidence of the total sums charged to the extent relevant for other

purposes.  This issue is currently under review by the Florida Supreme Court, and the matter should be monitored up through the date of final determination of this issue by this Court.

Defendant has cited to no cases that provide that in assessing the reasonable cost of *future* medical care the fact finder must limit Plaintiffs' recovery by the amounts that may be withheld by future providers due to the possible availability of Medicaid benefits.  Thus, as to future medical services no such limitation should be imposed by this Court.

E.    The Court Should Not Issue an Advisory Opinion to the Parties Concerning the Reasonableness of any Settlement Apportionment

Finally, Defendant seeks an advisory opinion of the Court that any settlement it agrees to must be set-off by $2,966,000, the amount it claims represents the economic damages portion of Plaintiffs' settlement with Memorial based on Fla. Stat. § 766.207(a).   Plaintiffs reply that no Florida case law supports Defendant's method of computing the settlement amount apportionable to economic damages.

Defendant relies on Wells v. Tallahassee Memorial Regional Medical Center, 659 So. 2d 249, 254 (Fla. 1999), in which the Florida Supreme Court detailed the method to be used by a court in determining the amount of a settlement between a plaintiff and a defendant to be set-off from an award against a co-defendant who does not settle but proceeds to trial.  In short, the percentage of the total recovery awarded by the jury against the non-settling Defendant that constitutes recovery for economic damages is applied to the settlement to determine the amount of the settlement that constitutes recovery for economic damages.  Id.  Defendant here admits that the Wells Court "did not have to apportion a prior settlement when the second defendant also settles with the plaintiff, and there is no jury verdict to control the allocation of economic and non-economic damages." (Dkt. 18).

23

Still, Defendant argues that since Memorial entered into a settlement with Plaintiffs while under an agreement to arbitrate pursuant to Fla. Stat.§766.207(a), which contains a $250,000.00 cap on the amount of recovery of non-economic damages, this Court should rule that any settlement the parties enter into here should include a set-off of $2,966,000 for economic damages based on the arbitration caps contained in Fla. Stat. §766.207(a). Defendant has not cited to and the Undersigned has not found any Florida authority that would support Defendant's request.

This suggestion is flawed on so many levels. First and foremost, how the parties opt to apportion or pay or calculate damages in settlement is a matter for the parties to decide, as settlement by definition is outside the purview of the Court. Secondly, Defendant concedes that the Plaintiffs and Memorial did not arbitrate to resolution but settled after arbitration. As such, the cap had no binding effect on their settling. Finally, Defendant concedes that it opted not to arbitrate and does not explain, therefore, why the benefit of the cap if it existed in this case should inure to its benefit in settlement or at the conclusion of the trial of the case. Accordingly, the Undersigned recommends that the Defendant's request that the Court find it is entitled to a set-off in the amount of $2,966,000 in any settlement agreement it might reach with Plaintiffs should be denied.

In summation, the Undersigned Recommends:

(1)    That the Court find that Defendant is not entitled to a set-off for Medicaid payments pursuant to Fla. Stat. § 768.76;

(2)    That the Court not award damages to Plaintiffs for medical expenses charged off by Plaintiffs' medical providers for past medical bills but that the Court allow Plaintiffs to introduce evidence during trial regarding the total sums of the medical bills

24

incurred to the extent relevant for other purposes.  That, as to future medical services, no such limitation should be imposed by this Court.

(3)     That the Court decline to advise the parties how to allocate or apportion the settlement that was obtained from Memorial to a settlement agreed to by the parties here.

Respectfully **RECOMMENDED** on this 8th day of March 2005.


_____
MARY S. SCRIVEN
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained within this report by **March 14, 2005** or to respond to any objections filed by **March 21, 2005** shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).

Copies to:

Counsel of Record

_____