## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARIA MATEO, a/k/a MARIA MATEO
JOSE and SELESTINIO SANCHEZ, as the
Parents and Natural Guardians of
RICARDO SANCHEZ, a Minor, and
Individually,

       Plaintiffs,

vs.                                CASE NO. 8:03-CV-480-T-17MSS

UNITED STATES OF AMERICA,

       Defendant.

_____/

### ORDER

This cause is before the Court on Defendant's Motion to Set Aside, in Part, Loan Receipt Agreement Between Plaintiffs and Manatee Memorial Hospital, filed on July 28, 2005 (Docket No. 55) and Plaintiffs' response thereto, filed August 19, 2005 (Docket No. 60).

### BACKGROUND

On March 17, 2003, Plaintiffs, MARIA MATEO and SELESTINO SANCHEZ (the "Plaintiffs"), individually, and as parents and natural guardians of Ricardo Sanchez (the "Minor Plaintiff"), filed a complaint (the "Complaint") against the United States of America (the "Defendant") for injuries caused by the employees, agents and servants of the Manatee County Rural Health Services, Inc., Parrish, Florida. The Plaintiffs filed the Complaint in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1331 (2005) (federal question), as the Defendant is the United States of America. Additionally, jurisdiction arose under 28 U.S.C. § 1346(b) (2005), as this is a civil action arising from the personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.

1

CASE NO. 8:03-CV-00480-EAK-MSS

In the Complaint, the Plaintiffs alleged that, as a direct and proximate result of the negligence of the Defendant, the Minor Plaintiff sustained permanent and total disability for which they seek damages.  (Docket No. 1)  Additionally, Plaintiffs also seek damages for themselves as parents of a permanently and severely disabled child.  (Docket No. 1)  This Court has since been notified of the death of the Minor Plaintiff.  (Docket No. 67)  On March 17, 2003, the case was assigned to District Judge Elizabeth A. Kovachevich and to Magistrate Judge Mary S. Scriven by the Clerk of this Court.

On May 21, 2003, the Defendant provided its Answer to Plaintiffs' Complaint.  (Docket No. 8)  Additionally, on July 16, 2004, the Defendant filed its Motion in Limine on Damages for Medical Expenses.  (Docket No. 18)  Furthermore, the Defendant filed its Motion to Bifurcate Trials of Liability and Damages and to Protect Dates on July 28, 2004.  (Docket No. 34)  In response, on July 30, 2004, the Plaintiffs filed their Motion in Opposition to Defendant's Motion to Bifurcate Trials of Liability and Damages and to Protect Dates.  (Docket No. 40)  On August 11, 2004, this Court filed an Order Denying Defendant's Motion to Bifurcate Trials of Liability and Damages.  (Docket No. 44)  Additionally, this Court found the Defendant's Motion to Protect Dates moot since the trial was continued.  (Docket No. 44)

In response to Defendant's Motion in Limine Regarding Damages for Medical Expenses, Judge Scriven filed a Report and Recommendation on March 8, 2005.  (Docket No. 50)  On March 16, 2005, the Defendant filed its Objection to Report and Recommendation or, in the Alternative, Motion for Reconsideration.  (Docket No. 51)  This Court, on July 6, 2005, filed an Order Adopting Magistrate Judge Scriven's Report and Recommendation.  (Docket No. 54)  Finally, on July 28, 2005, the Defendant filed its Motion to Set Aside, in Part, Loan Receipt Agreement Between Plaintiffs and Manatee Memorial Hospital ("Manatee").  (Docket No. 55)  The Plaintiffs filed their Memorandum of Law in Opposition to Defendant's Motion to Set Aside on August 19, 2005.  (Docket No. 60)

CASE NO. 8:03-CV-00480-EAK-MSS

## <u>DISCUSSION</u>

The question before this Court is a novel one; specifically, the question is whether Paragraph Two of the Plaintiffs' settlement agreement with Manatee Memorial Hospital shifts losses to the Defendant, in violation of both public policy and the law of the State of Florida. The Defendant makes two main arguments regarding the settlement agreement:  (1) that the agreement is so egregious that it rises to a level worse than a Mary Carter agreement; and (2) that the document between the Plaintiffs and Manatee is a loan agreement rather than a settlement agreement and such $1,000,000.00 "loan" described in Paragraph Two of the document violates Florida's enactment of the Uniform Contribution Among Tortfeasor's Act, by allowing the settling hospital to extract contribution from the instant Defendant, even though the Defendant was not a party to the agreement.

## I.    <u>Defendant's Argument Regarding the Impropriety and Illegality of the Agreement</u>

A Mary Carter agreement is one in which a co-defendant secretly agrees with the plaintiff that, if that defendant will defend himself in court, his own maximum liability will be proportionately lessened by increasing the other co-defendants' liability.  *Dosdourian v. Carsten*, 624 So. 2d 241, 243 (Fla. 1993).  Secrecy is the key to this type of arrangement, as the trier of facts, if so informed, would likely vary the credence given to the testimony and conduct of the signing defendant as it relates to the non-signing defendants.  *Id.*

Additionally, by portraying a grim picture of the other defendants' misconduct or, sometimes, by admissions against himself and the other defendants, the cooperating co-defendant could lessen or dispose of his own liability via use of the secret Mary Carter agreement.  *Ward v. Ochoa*, 284 So. 2d 385, 387 (Fla. 1973).  Finally, it is the public policy of the State of Florida to promote settlement and early termination of litigation.  *Abbott & Purdy Group, Inc. v. Bell*, 732 So. 2d 1024, 1027 (Fla. 4th Dist. App. 1999).

The Defendant concedes that the Plaintiffs' settlement with Manatee is not the type of Mary Carter agreement void on its face in the State of Florida.  However, the Defendant argues that the settlement is worse than many Mary Carter agreements because it guarantees unfair

CASE NO. 8:03-CV-00480-EAK-MSS

apportionment by unlawfully diminishing the value of the setoff otherwise available to the non-settling defendant.  This Court disagrees with the Defendant's characterization of the settlement agreement between the Plaintiff and Manatee for multiple reasons.  The agreement in question is a settlement and release of claims, not an agreement to increase the potential exposure of the Defendant.  Additionally, this agreement is far from secret; in fact, it is public.  Furthermore, Manatee is not a defendant in the present litigation, so there can be no concern regarding collusion between the Plaintiffs and Manatee.  Finally, the Defendant has not provided this Court with a single case to support its contention that this type of agreement is more egregious than a Mary Carter agreement.

The Defendant also argues that the agreement in question is against public policy.  The Defendant seems to ignore the fact that Florida promotes settlements and early termination of litigation, which is exactly what the agreement between the Plaintiffs and Manatee accomplishes.  Additionally, this Court acknowledges the rights of parties to settle disputes via terms that both sides deem agreeable.  The Defendant was not a party to these settlement negotiations and the mere fact that the Defendant does not like the terms of the agreement reached by the parties does not make it improper or contrary to public policy.

In conclusion, this Court disagrees with the Defendant's argument that the settlement agreement between the Plaintiffs and Manatee is so egregious that it rises to a level worse than a Mary Carter agreement.  The settlement agreement in question is a standard agreement for the settlement and release of claims (albeit one with a repayment provision) that in no way prejudices the Defendant.

II.      **Defendant's Argument that the Agreement in Question is a Loan Agreement Which Violates Florida's Enactment of the Uniform Contribution Among Tortfeasor's Act**

A settlement agreement is "an agreement ending a dispute or lawsuit." (Black's Law Dictionary, 8th Edition)  Alternatively, a loan receipt agreement is "a settlement agreement by which the defendant loans money to the plaintiff interest-free, the plaintiff not being obligated to repay the loan unless he or she recovers money from other tortfeasors responsible for the same

4

CASE NO. 8:03-CV-00480-EAK-MSS

injury." *Id*.  Florida's Uniform Contribution Among Tortfeasors Act provides that when multiple people are jointly or severally liable in tort for the same injury to a person (or property) or for the same wrongful death, there is a right of contribution among them even though no judgment has been recovered against them.  (Fl. Stat. § 768.31 (2005))

The Defendant takes issue with Paragraph Two of the agreement and characterizes the document as a loan agreement.  Although the word "repayment" is used once in paragraph at issue, this Court does not find the word "loan" used in any part of the paragraph.  The Plaintiffs and Manatee simply agreed that Manatee would receive fifty percent of each dollar up to the first two million dollars received from any settlement or judgment made between the Plaintiffs and any remaining defendant (the Defendant is merely one of the remaining defendants).  Additionally, the agreement specifically states that, in exchange for Manatee's payment, Manatee is permanently discharged and released from any claims or causes of action arising from these injuries.  Thus, Manatee is no longer a party to the litigation and has no obligation to cooperate with the Plaintiffs.  Simply stated, Manatee is released from all claims in exchange for its payment of a total sum of $5,000,000.00.

In support of its argument, the Defendant relies on *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin*, a case from the Supreme Court of Alaska.  828 P.2d 745 (Alaska 1992).  As the Plaintiffs point out, *Bohna* involved a loan receipt agreement between an insurer and its insured, with repayment to occur if the insured was victorious in a separately filed malpractice suit against his attorneys.  *Id*. at 748.  Additionally, although the court in *Bohna* mentions Mary Carter agreements, it only does so in a note stating that some of the cases the court listed have given certain loan receipt agreements that label.  *Id*. at 756, n.26.  The factual situation set forth in *Bohna* is completely different than the one in the present case.  As stated above, the agreement between the Plaintiffs and Manatee provides that Manatee will pay $5,000,000.00, including a portion of which was a structured settlement.  In return, the Plaintiffs agreed to a conditional repayment on a fifty/fifty basis of up to $1,000,000.00, to be repaid after $2,000,000.00 is awarded.  Additionally, if the Plaintiff's award is less than $2,000,000.00, the Plaintiffs will split

5

CASE NO. 8:03-CV-00480-EAK-MSS

the entire recovery fifty/fifty with Manatee.  Furthermore, in *Bohna*, the agreement in question was specifically called a "loan receipt agreement."  *Id*. at 751.  That is not the case in the facts before this Court.  Finally, the Alaska Supreme Court specifically stated that loan receipt agreements do not constitute illegal assignments; such agreements merely allow the settling defendant to induce the plaintiff not to sue him.  *Id*. at 756.

In conclusion, this Court finds that Defendant's characterization of the agreement between the Plaintiffs and Manatee as a loan agreement is incorrect.  Additionally, the Defendant's reliance upon *Bohna* is misplaced.  Even if the agreement in question were a loan repayment agreement as discussed in *Bohna*, the case supports the use of such a document.

Accordingly, it is

**ORDERED** that the Defendants' Motion to Set Aside, In Part, Loan Receipt Agreement Between Plaintiffs and Manatee Memorial Hospital (Docket No. 55) be **DENIED**.

**DONE and ORDERED** in Chambers, in Tampa, Florida, on this 27th day of February, 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record

6